IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VANESSA A. WILSON, | )<br>) |
| Plaintiff, | ) Case No. 06 cv 3655<br>) |
| v. | )<br>) Judge John W. Darrah |
| INTERNATIONAL TRUCK AND<br>ENGINE CORPORATION and<br>JOE ASSAF, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Vanessa Wilson, brings this action against Defendants International Truck and Engine Corporation ("Navistar") and Joe Assaf under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12102(2) (the "ADA"), and state law. Defendants move for summary judgment on all of Plaintiff's claims. (Doc. Nos. 70, 73.) For the reasons stated below, Defendants' motion is granted in part and denied in part.

## LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all

1

reasonable inferences in the non-moving party's favor. *Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006). The moving party has the initial burden to show that the evidence is insufficient to establish a material element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, the non-moving party cannot rest on conclusory pleadings but must "set forth specific facts in affidavits or otherwise to show that there is a genuine issue of material fact that must be decided at trial." *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 361 (7th Cir. 1987). If the evidence supporting the non-moving party's claim is insufficient for a reasonable jury to return a verdict in its favor, the court will grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## BACKGROUND

The Court derives the following background facts from the parties' filings of record, including their filings required under Local Rule 56.1.[1] Where the parties disagree over relevant facts, the parties' competing versions are noted and/or are addressed in the pertinent analysis section below.

---

[1] Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to respond to a Rule 56.1 statement results in the Court's admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

Navistar is a Delaware corporation, having its principal place of business in Warrenville, Illinois. (Def. Statement of Facts ("Def. SOF," ¶ 1.) Navistar is a producer of trucks and truck engines. One of its facilities is located in Melrose Park, Illinois (the "Melrose Park Plant" or "MPP"). (Def. SOF, ¶ 1.)

Plaintiff, Vanessa Wilson, was first hired by Navistar at its Indianapolis Engine Plant in January 1999 as an hourly assembly worker. (Def. SOF, ¶ 5.) Plaintiff was laid off from this job on September 27, 2002, and placed on a master recall list. Plaintiff was recalled to an assembly-line position at the MPP on August 24, 2004.

After commencing work at the MPP on August 24, 2004, Plaintiff lodged a complaint against one of her supervisors, Charles Peal, in a meeting on September 3, 2004, with Jim Marzec, then-Human Resources Manager at the MPP. (Def. SOF, ¶ 18.) The substance of Plaintiff's Complaint is disputed by the parties. Defendants contend that Plaintiff's September 3 complaint was only of Peal's "disrespecting" her and yelling at her. According to Defendants, Plaintiff did not complain of sexual harassment by Peal at this or any other time while she was employed at the MPP. (Def. SOF, ¶¶ 19-20.) Pointing to testimony in her own deposition, Plaintiff, however, contends she did complain of sexual harassment by Peal at this meeting. (Pltf. Res. to Def. SOF, ¶ 20.) Specifically, she contends she informed Marzec of Peal's inappropriate touching of her body while on the MPP floor, as well as many inappropriate comments made to her by Peal. (Pltf. Res. to Def. SOF, ¶ 20.)

Further, Plaintiff contends, starting from the very beginning of her employment at the MPP, she was subjected at work to a constant barrage of inappropriate sexually

explicit comments and conduct by a number of male employees – including Peal; MPP manager, Kevin Holley; and co-worker, Bobby Taylor. (Pltf. Res. to Def. SOF, ¶ 20.)[2] Plaintiff contends she repeatedly reported to Marzec the comments and conduct to which she was subjected, in addition to reporting Peal's conduct on September 3. However, she testified Marzec did nothing about her complaints.

Plaintiff contends the sexually hostile environment to which she was subjected at the MPP continued and escalated to an intolerable event that occurred on September 24, 2004, involving Defendant Assaf.

Defendant Assaf was hired by Navistar at the MPP in 1966 as an Inspector. As to Assaf, the following facts are not in dispute. Assaf became a Machine Operator in 1970, a Final Equipment Inspector in 1972, and a Group Leader in 1985. He was a member of the janitorial staff in 1994 and the Tool Crib Attendant since 2004. Assaf retired from Navistar on September 30, 2007, after forty-plus years of service. (Def. SOF, ¶ 2.) Prior to September 24, 2004, Assaf had never spoken to Plaintiff, and Plaintiff had never met him. (Def. SOF, ¶ 22.) Assaf was not, nor ever had been, Plaintiff's supervisor. (Def. SOF, ¶ 23.)

It is also undisputed that Plaintiff reported the alleged conduct by Assaf to Navistar. At approximately 6:00 a.m. on September 24, 2004, Plaintiff called Doc Ford, a union representative at the Indianapolis Engine Plant, and told him that Assaf had propositioned her. (Def. SOF, ¶ 25.) Ford told her she needed to talk to Navistar's

---

[2] Plaintiff's complaint and deposition detail the types of inappropriate sexually explicit comments and conduct to which Plaintiff contends she was subjected from these male employees on a daily basis.

4

human resources department and that someone from there would immediately call her back. Roy Civils, a human resources representative at the Indianapolis Engine Plant, did immediately call her back. (Def. SOF, ¶ 25.) Civils called Marzec and informed him of Plaintiff's report. (Marzec Dep. 97.) Plaintiff also called a 1-800 EAP hotline set up by Navistar and reported the incident. (Pltf. Dep. 93.)

Further, Plaintiff complained to Marzec on September 24, 2004, that she had been sexually harassed by Assaf. (Def. SOF, ¶ 28.) What exactly Plaintiff reported to Marzec about the incident is not undisputed between the parties. Plaintiff contends she was "set-up" by co-worker J. Johnson to meet Assaf in a discrete and caged area of the MPP facility to retrieve a pair of work gloves and that, once she arrived in the area, Assaf cornered her so she could not leave, pressed the front of his body up to her and repeatedly propositioned her for oral sex. (Pltf. Dep. 56-59.) Plaintiff testified that she did not see anyone else in the caged area at the time of the alleged incident. (Pltf. Dep. 60.)

Marzec spoke with Plaintiff about the incident, and Marzec investigated the complaint, interviewing a number of witnesses. Assaf denied Plaintiff's allegations. (Def. SOF, ¶ 34.) Following his investigation, Marzec drafted an Internal Investigative Report, dated September 30, 2004. (Def. SOF, Ex. 15.) The report identified a number of "circumstances which may support [Plaintiff's] account" of the incident. For instance, the report noted that Plaintiff's version of the events was consistent with what she told other co-workers immediately after the incident that day. The report also questioned why Plaintiff would make up such a story and why there was any need for the Plaintiff to

5

retrieve work gloves from the caged area in the first place. However, the report notes that Assaf had "[t]hirty-five years service," his "[r]eputation in workplace is sound" and there was "[n]o disciplinary action on file." (Def. SOF, Ex. 15.) The Report concludes:

> 1. Because of conflicting accounts and absent direct corroboration of what was actually said, it is not possible to determine with certainty whether harassment occurred.
>
> 2. Although there are other circumstances which may arguably support [Plaintiff's] allegation, these circumstances are not sufficiently convincing or compelling to warrant disciplinary action.
>
> 3. It cannot be said that [Plaintiff] should be given greater credibility than Joe Assaf.
>
> 4. Therefore, the results of the harassment investigation are inconclusive. No further action is warranted at this time.

(Def. Ex. 15.)

Plaintiff disputes Marzec's conclusion and denies that there was no corroboration of her account. Among other things, Plaintiff notes Marzec's deposition testimony that "[Plaintiff's] story was corroborated by others outside," as well as his notes of his September 24, 2004 meeting with Plaintiff in which he wrote that Plaintiff "offered a credible, believable story" and Assaf's "assertion that he said nothing offensive to [the Plaintiff] (in light of all factors) is unconvincing." (Marzec Dep. 122-23; Pltf. Ex. I, September 24, 2004 Notes, p. 4.)

Following the investigation, Assaf received no punishment or disciplinary action from Navistar. However, he was told by Marzec not to talk to Plaintiff at work. (Def. SOF, ¶ 40.)

6

There is undisputed evidence that Plaintiff suffered emotional trauma following the September 24, 2004 incident. Plaintiff's treating physician testified that Plaintiff experienced post-traumatic stress disorder and depression as a result of the incident. (Osman Dep. p. 46). Plaintiff's last active day of employment at the MPP was September 25, 2004. (Def. SOF, ¶ 47.) Plaintiff received both short and long-term disability benefits from Navistar until September 27, 2007.

Arising from these facts, Plaintiff has alleged the following claims for relief: sexual harassment in violation of Title VII against Navistar (Count I); unlawful retaliation against Navistar for Plaintiff's reporting of sexual harassment (Count II); a claim against Navistar under the ADA for allegedly refusing to provide Plaintiff a reasonable accommodation to her known mental limitations after the September 24, 2004 incident; and state-law claims for assault and battery and intentional infliction of emotional distress against Defendant Assaf (Counts IV and V). Defendants move for summary judgment on each of these counts.

## ANALYSIS

### *Sexual Harassment (Count I)*

Title VII makes it unlawful to an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII's prohibition against sex discrimination protects employees against unwelcome sexual advances that create an offensive or hostile working environment. *Cooper-Schut v. Visteon Automotive Systems*, 361 F.3d 421, 426 (7th Cir.

2004). To establish a *prima facie* case of hostile-work-environment sexual harassment, an employee must establish that: (1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on her sex; (3) the harassment had the effect of unreasonably interfering with her work performance in creating an intimidating, hostile, or offensive working environment that seriously affected her psychological well-being; and (4) a basis for employer liability exists. *Phelan v. Cook County*, 463 F.3d 773, 783 (7th Cir. 2006).

Employers are strictly liable for harassment by a supervisor. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004). Where it is alleged that a co-worker is responsible for the harassment, the employer is liable if it knew or should have known of the harassing conduct of the co-worker toward the plaintiff and failed to take reasonable remedial action to stop the harassment. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976 (7th Cir. 2004).

Defendants contend they are entitled to summary judgment on Plaintiff's claim of hostile-work-environment sexual harassment because Navistar reasonably responded to the one complaint of sexual harassment Plaintiff reported to it – the September 24, 2004 complaint involving Defendant Assaf.[3] Thus, Defendants contend, they are entitled to

---

[3] Defendants take the position that Plaintiff did not complain about sexual harassment by Peal on September 3, 2004, pointing to Plaintiff's deposition testimony that she complained only that Peal yelled at and "disrespected" her, and to the charge of discrimination Plaintiff filed with the Illinois Department of Human Rights, in which Plaintiff did not mention harassment by Peal. (*See* Def. Ex. 13.)

8

summary judgment under the affirmative defense established in *Burlington Industries v. Ellerth*, 524 U.S. 742, 763 (1998), in which the Supreme Court established that an employer will be relieved of liability for harassment where it can establish that: (1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the employee failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm.

Navistar points to evidence that it has anti-sexual harassment policies in place establishing several avenues for employees to report incidents of sexual harassment, including reporting it to the employee's immediate supervisor or to the employee's supervisor's supervisor, reporting it to the local or corporate Human Resources Department, calling Navistar's security hotline, or by calling an 800 number run by an independent company that relays information on a confidential basis. (*See* Def. Ex. 7.) According to Defendants, the only complaint of sexual harassment Plaintiff made to Navistar was Plaintiff's September 24, 2004 complaint about Assaf, which Defendants contend was taken seriously, thoroughly investigated and handled reasonably by Navistar. Defendants contend that after investigation, the situation boiled down to a "he said/ she said" situation, in which Navistar decided to credit the account of its long-time employee Assaf over Plaintiff. Defendants contend that, under the law, this is all that is required of Navistar.

Plaintiff, in opposition, denies that Navistar is entitled to rely on the *Ellerth* defense. First, she points out that the defense is not available when a plaintiff alleges harassment by a supervisor and there has been a tangible employment action, such as

9

termination. Plaintiff asserts that she was harassed by her supervisors, Peal and Holley, and was terminated by Navistar on September 25, 2004. Thus, she contends, the *Ellerth* defense is not available with respect to their actions.

In addition, Plaintiff also disputes that Navistar had a comprehensive sexual harassment policy in place and that she failed to properly report an atmosphere of sexual harassment to Marzec. She points to her own deposition testimony, in which she testified that she repeatedly complained to Marzec about the sexually hostile atmosphere to which she was subjected by male employees at the MPP. Her position is that September 24, 2004 was not the only report she made of harassment. Rather, she contends she reported many incidences of inappropriate conduct by male employees to Marzec, and Navistar failed to take action in response to these complaints. Plaintiff also disputes the appropriateness of Navistar's action with respect to the September 24, 2004 complaint.

The Court has reviewed the parties' arguments and submitted evidence. There are genuine issues of material fact precluding summary judgment on Plaintiff's claim of sexual harassment based on a hostile work environment. Specifically, genuine issues of material fact exist as to what Plaintiff reported to Navistar about her work environment and/or what Navistar reasonably should have known about Plaintiff's environment. At this summary judgment stage, the Court must view the evidence in the light most favorable to Plaintiff. Plaintiff has pointed to sufficient evidence in the record to show that there are at least triable issues as to whether she reported to Marzec more incidents

of harassment by male co-workers and supervisors than only her September 24, 2004 complaint.

Furthermore, there are genuine issues as to whether Navistar took reasonable steps in response to Plaintiff's complaints of harassment. Plaintiff contends Navistar took no action in response to her complaints about Peal, Holley and other male employees. In addition, Plaintiff has pointed to sufficient evidence to create at least a triable issue as to whether Navistar's response to her September 24, 2004 complaint – in which Navistar credited Assaf's version of events and merely told Assaf not to talk to Plaintiff at work – was legally sufficient. *See, e.g., Longstreet v. Illinois Dep't of Corr.*, 276 F.3d 379, 382 (7th Cir. 2002) (in assessing whether an employer's response was reasonable, the court considers whether defendant's response was reasonably calculated to prevent further harassment based on the facts and circumstances at the time); *Smith v. Sheahan*, 189 F.3d 529, 535 (7th Cir. 1999) (the court must determine if employer's response "was a reasonable one, designed to remedy the illegal harassment, or a negligent one that did not adequately respond to the situation in the midst.")

Because the Court finds genuine issues of fact to exist on these points, Defendants' motion for summary judgment on Plaintiff's sexual harassment claim is denied.

*Retaliation (Count II)*

Title VII forbids an employer to discriminate against an employee because she has "opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a); *Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001) (*per*

11

*curiam*). To establish a retaliation claim under Title VII, a plaintiff may present direct evidence of retaliation or proceed using a burden shifting mechanism. *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 601 (7th Cir. 2001) (*Fyfe*); *Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001). "Direct evidence is that which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption, and usually takes the form of an acknowledgment of discriminatory intent by the employer." *Fyfe*, 241 F.3d at 601 (quotations omitted).

Where a Plaintiff has not offered any direct or circumstantial evidence of retaliation, she must proceed under the burden-shifting approach. In order to prevail on a claim for retaliation under Title VII using the burden-shifting mechanism, a plaintiff must first establish a *prima facie* case by showing that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal link between the protected expression and the adverse action. *Fyfe*, 241 F.3d at 601; *Aviles v. Cornell Forge Co.*, 241 F.3d 589, 592 (7th Cir. 2001). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Aviles*, 241 F.3d at 592; *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994). If the defendant is able to provide evidence of such a reason, the burden shifts back to the plaintiff to show that the articulated reason is actually a pretext for discrimination. *Aviles*, 241 F.3d at 592; *Dey*, 28 F.3d at 1457.

There is no dispute that Plaintiff engaged in statutorily protected activity when

12

she reported the alleged conduct of Assaf on September 24, 2004.[4] However, Defendants argue, they are entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff was unable, at her deposition, to identify any retaliatory action taken against her for reporting harassment. (*See* Def. Br. at 12, citing Pltf. Dep. at 216-17.) Defendants assert that no retaliatory action was taken against Plaintiff, as it is undisputed that the last day of Plaintiff's active employment at Navistar was September 25, 2004, and Plaintiff received short and long term benefits from Navistar until September 25, 2007.

Plaintiff responds to Defendants' motion for summary judgment on her retaliation claim by stating in her opposition brief: "[s]ince [her] deposition, the Plaintiff has learned that Navistar terminated her on September 25, 2004, the day after her complaint of sexual harassment." (Pltf. Opp. at 12.) To support this assertion, Plaintiff cites her additional statement of facts made pursuant to Local Rule 56.1, which in turn cites to an undated "Declaration" by the Plaintiff, stating that she was told by a health benefits representative in the beginning of May 2008 that her employment with Navistar "terminated" on September 25, 2004. (*See* Pltf. Ex. J.) This Declaration, Plaintiff contends, is sufficient to create a genuine issue of material fact as to whether she was terminated the day after she reported harassment.

Plaintiff's Declaration is insufficient to withstand summary judgment. A party cannot create a material issue of fact by a statement contradicting earlier sworn testimony. *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532 (7th Cir.1999). When

---

[4] If it were determined that Plaintiff reported other instances of harassment, such reports would likewise constitute protected Title VII activity.

given the opportunity to explain the basis for her retaliation claim in her deposition, Plaintiff did not state that she was terminated by Navistar on September 25, 2004. Rather, Plaintiff testified that she had not been terminated by Navistar and still carried their insurance. (Pltf. Dep. at 16.) Thus, Plaintiff cannot use her "Declaration" now for the purpose of creating an issue that Navistar retaliated against her by terminating her employment.

Because Plaintiff has failed to point to evidence sufficient to show that she suffered an adverse employment action as a result of engaging in protected Title VII activity of reporting sexual harassment, Defendants are entitled to summary judgment on Count II.

*Failure to Accommodate (Count III)*

The ADA prohibits employers from discriminating against "qualified individual[s] with disabilities," which includes failing to make reasonable accommodations to the known limitations of an otherwise qualified disabled employee. 42 U.S.C. § 12112(5)(A). To be a qualified individual with a disability, a plaintiff must demonstrate that she can perform the "essential functions" of her job with or without a reasonable accommodation.

Defendants argue summary judgment should be granted on Plaintiff's claim under the ADA because Plaintiff "has taken the position that she is fully disabled and that she will be wholly unable to work at any occupation, with or without accommodation, for the rest of her life." This position, Defendants contend, demonstrates that Plaintiff is not a qualified individual with a disability under the ADA. (Def. Br. at 13.) Defendants rely

on deposition testimony given by Plaintiff's treating physician, Dr. Vahid Osman.

Dr. Osman testified that in his opinion, Plaintiff is completely disabled and "has no possibility of going back to work in the future." (Osman Dep. at 54.)

Plaintiff offers no response in her opposition brief to Defendants' argument that Dr. Osman considers her to be unable to work even with accommodation. Nor does Plaintiff deny that her physician gave testimony that she has no possibility of going back to work under any circumstances. However, Plaintiff denies that she claims to be completely disabled and unable to return to work as stated by Dr. Osman. (*See* Pltf. Res. to Def. SOF, ¶ 51.) Plaintiff explains this denial by stating that she "cannot testify to the medical opinion" given by Dr. Osman.

Instead, Plaintiff opposes Defendants' motion for summary judgment on her ADA claim by relying on a medical opinion given by Dr. Robert Reff, an Independent Medical Examiner Navistar hired to evaluate Plaintiff. To show that she is a qualified individual with a disability – and that Navistar failed to accommodate her disability because it failed to transfer her to another facility – Plaintiff cites an April 21, 2005 report prepared by Dr. Reff for Navistar (in which Dr. Reff responded to the question of Plaintiff's "Prognosis") (*See* Pltf. Opp. at 12-13.) In this April 21 report, Dr. Reff stated:

> It is my opinion based on two evaluations of Ms. Wilson, a review of all records made available to me and a reasonable degree of medical psychiatric certainty, that while it is likely that Ms. Wilson will have the capacity to return to work with continuation of treatment, it is unlikely that she will ever be able to return to work at the Melrose Park Plant. Any attempt to do so will likely be experienced as a reenactment of the traumatic event and cause or contribute to further regression or a recurrence of symptoms. It would be my recommendation that every attempt be made to transfer Ms. Wilson to any other facility within the

15

> company. With the potential for transfer, it would be probable that Ms. Wilson would be capable of returning to work full time . . . without restrictions or limitations within three to four months. Without the possibility of transfer, I believe that it is unlikely that she will ever be capable of returning to work.

(Pltf. Ex. Q, p. 5.)

The evidence as to Plaintiff's ability to perform the essential functions of her job with or without accommodation creates a factual dispute. That Plaintiff's own doctor stated that she was totally unable to work after Dr. Reff opined that she could return to work with the accommodation of transfer suggests that, at some point, Plaintiff became totally unable to perform the essential functions of her job. Nevertheless, in that Plaintiff has relied on Dr. Reff's report, and the report is sufficient to show that Plaintiff was able to perform the functions of her job with the accommodation of transfer to another facility, Plaintiff has pointed to evidence sufficient to create at least a triable issue as to whether she is a qualified individual with a disability for purposes of her ADA claim.

Defendants also urge judgment in their favor on the ADA claim on the ground that the accommodation of transfer is an unreasonable accommodation as a matter of law. Defendants' basis for this position is that transfer to another facility would have violated the collective bargaining agreement between Navistar and the union. The Seventh Circuit has held that "requested accommodations which would interfere with bona fide seniority rights of other employees are unreasonable as a matter of law, and not mandated by the ADA." *Brown v. Illinois Central R.R. Co.*, 254 F.3d 654, 661 (7th Cir. 2001). It is undisputed that under the collective bargaining agreement between Navistar and the union, transfers to facilities are subject to seniority rights. (Def. SOF, ¶ 54.)

Plaintiff does not dispute Navistar's assertion that a transfer not based on seniority rights would violate the CBA, but Plaintiff contends Navistar's theory that a transfer would violate the CBA "was dispelled" by testimony given by Marzec that "Navistar could have requested a variance from the union and/or transferred the Plaintiff to a nonrepresented position within Navistar." (Pltf. Opp. at 13, citing Marzec Dep. 155.)

Marzec's testimony does not "dispel" Navistar's position that a transfer to a represented position would violate the CBA. Marzec clearly testified that in his opinion, such a transfer would violate the CBA. However, Marzec's testimony acknowledging that a variance could have been requested and/or that Plaintiff could have applied for available, nonrepresented positions suggests at least that Navistar could have taken other steps to find an appropriate, reasonable accommodation for Plaintiff. "The 'reasonable accommodation' element of the [ADA] imposes a duty upon employers to engage in a flexible, interactive process with the disabled employee needing accommodation so that, together, they might identify the employee's precise limitations and discuss accommodations which might enable the employee to continue working. . . . An employer must make a reasonable effort to explore the accommodation possibilities with the employee." *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir.1998) (citations omitted). Even acknowledging that transfer to a union position was not a reasonable accommodation, this does not necessarily establish that Navistar complied with its obligation under the ADA. In that Navistar's evidence does not show that no reasonable accommodation was available for Plaintiff under the circumstances, Navistar

is not entitled to summary judgment on Count III.[5]

*Plaintiff's State-Law Claims (Counts IV and V)*

Finally, Defendants move for summary judgment on Plaintiff's state-law claims against Defendant Assaf on the ground that they are preempted by the Illinois Human Rights Act ("IHRA"). Whether a state tort claim is preempted by the IHRA turns on whether the Plaintiff can establish the necessary elements of the claim independent of its nature as a civil rights violation. If the Plaintiff can establish the elements of the claim without reference to any duties created by the IHRA, then the claim is not preempted by the IHRA. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006). In *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 517 (Ill. 1997), the Illinois Supreme Court held that the plaintiff's claims of assault and battery and false imprisonment were not "inextricably linked" with claims of sexual harassment because the plaintiff could establish "the necessary elements of each tort independent of any legal duty created by the Act."

Similarly, here, although Plaintiff's claims for assault and battery and intentional infliction of emotional distress against Assaf arose during the September 24, 2004 incident, which is also at issue in Plaintiff's claim for sexual harassment under Title VII, the state claims against Assaf can be established without reference to Plaintiff's civil

---

[5] Defendants argue that Plaintiff never requested a variance or attempted to apply for a nonrepresented position at another facility. However, as discussed above, the law requires an employer to engage in an interactive process with a disabled employee to find an appropriate reasonable accommodation. It is not necessarily required that an employee suggest each possible accommodation.

rights claims against Navistar. Therefore, Plaintiff's state-law claims against Assaf are not preempted by the IHRA.

Furthermore, the Court does not agree that the evidence of record, which at this stage must be viewed in the light most favorable to Plaintiff, is insufficient as a matter of law to show extreme and outrageous conduct as required for a claim of intentional infliction of emotional distress under Illinois law. *See e.g., Piech v. Arthur Andersen & Co.*, 841 F. Supp. 825, 832 (N.D. Ill. 1994) (citing cases presenting facts sufficient to support claim).

Accordingly, summary judgment is not warranted as to Counts IV and V.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is denied as to Counts I, III, IV and V. The motion, however, is granted as to Count II, Plaintiff's claim of illegal retaliation.

Date: September 4, 2008

JOHN W. DARRAH
United States District Court Judge